**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, 378 N. Main Avenue Tucson, AZ 85701<br><br>        Plaintiff,<br><br>   v.<br><br>DAVID BERNHARDT, *in his official capacity as Secretary of the United States Department of the Interior*, 1849 C Street NW Washington, DC 20240<br><br>*and*<br><br>AURELIA SKIPWITH, *in her official capacity as Director of the United States Fish and Wildlife Service*, 1849 C Street NW Washington, DC 20240<br><br>        Defendants. | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>Case No.: |

**INTRODUCTION**

1.      In this action, the Center for Biological Diversity ("Center") challenges the U.S. Fish and Wildlife Service's ("Service" or "FWS") failure to develop and implement a legally valid recovery plan for the Houston toad (*Bufo houstonensis*), in violation of the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544.

2.      The Service listed the Houston toad as "endangered" under the ESA nearly fifty years ago. Despite the continued imperiled status of this species, the Service has failed to complete a scientifically-based, legally valid recovery plan for the Houston toad. The ESA requires a recovery plan to organize and coordinate efforts to safeguard endangered species from

extinction and restore them from their imperiled state. The Service issued a document styled as a "Recovery Plan" for the Houston toad in 1984 [hereinafter "1984 'Recovery Plan' document"], but the Service itself admitted in 2011that this document lacked basic components of a recovery plan. The Service has not made any revisions or updates to this document in the intervening thirty-six years. In 2011, the Service released a five-year status review for the Houston toad, in which the agency found that the 1984 "Recovery Plan" document did not contain any recovery criteria, did not address all five listing factors relevant to the species, and was no longer based on the best available science. Although the Service indicated in its 2011 five-year review that it was working on developing a new recovery strategy and recovery plan, no such plan has been released to date.

3. The Service's failure to prepare a legally required recovery plan for the Houston toad violates section 4(f) of the ESA, 16 U.S.C. §§ 1533(f), and constitutes agency action unlawfully withheld and unreasonably delayed under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1). Accordingly, the Center brings this action against the Service to: (1) secure declaratory relief that the Service is in violation of the ESA for failing to create a legally valid recovery plan for the Houston toad and (2) enjoin the agency to issue a recovery plan according to a timeline established by the Court.

## JURISDICTION AND VENUE

4. This action arises under the ESA, 16 U.S.C. § 1531 *et seq*. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. §§ 2201-2202 (declaratory judgments and further relief), 16 U.S.C. § 1540(c), (g)(1)(c) (action arising under the ESA and citizen suit provision). The Center has properly given notice to the Service of its claims under the ESA in accordance with 16 U.S.C. § 1540(g)(2)(c).

5. Venue in this Court is proper under 28 U.S.C. § 1391(e) because federal defendants reside in this judicial district. The Center for Biological Diversity also maintains an office in this judicial district.

**PARTIES**

6. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY (the "Center") is a non-profit organization that is dedicated to the protection of native species and their habitats through science, policy, and environmental law. The Center is incorporated in California and headquartered in Tucson, Arizona, with offices in Arizona, California, Colorado, the District of Columbia, Florida, Hawai'i, Idaho, Minnesota, Nevada, New Mexico, New York, North Carolina, Oregon, Washington, and Mexico. The Center has more than 70,000 active members, including members within the Houston toad's current and historic range.

7. The Center brings this action on its own institutional behalf and on behalf of its members, who derive scientific, aesthetic, recreational, and spiritual benefits from endangered and threatened species and their habitats. The Center's members include individuals who regularly visit natural areas that are occupied by the Houston toad, and seek to observe or study the toad in its natural habitat. The Center's members and staff derive educational, scientific, recreational, spiritual, professional, and aesthetic benefits from these activities, and intend to continue to use and enjoy these areas in the future. Defendants' failure to create a legally valid recovery plan for the Houston toad has injured and continues to harm the Center and its members' interests in this species' conservation. This harm would be remedied by a court order directing the Service to issue a legally valid recovery plan for this species by a date-certain.

8. Defendant DAVID BERNHARDT is the Secretary of the Department of the Interior. The Secretary of the Interior is responsible for making decisions and promulgating

regulations under the ESA, including decisions regarding recovery plans. He is sued in his official capacity.

9. Defendant AURELIA SKIPWITH is the Director of the U.S. Fish and Wildlife Service. The Secretary of the Interior has delegated to the Service, among other things, the responsibility to develop and implement recovery plans for non-marine species. She is sued in her official capacity.

## STATUTORY BACKGROUND

10. The Endangered Species Act, 16 U.S.C. §§ 1531-1544, is "the most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*, 437 U.S. 153, 180 (1978). Congress enacted the ESA, in part, to provide a "means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . . [and] a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b). The ESA defines "conservation" as the "use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary," *id.* § 1532(3), i.e. to bring about the recovery of species listed as endangered or threatened. *See id.* § 1532(6), (20) (definitions of "endangered species" and "threatened species").

11. The ESA requires the Secretary to protect imperiled species by listing them as either "endangered" or "threatened." 16 U.S.C. § 1533(a)(1). The ESA defines an "endangered species" as "any species which is in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A "threatened species" is "any species which is likely to become an endangered species within the foreseeable future throughout all or a significant portion of its

range." *Id*. § 1532(20). The term "species" includes "any subspecies . . . and any distinct population segment . . . fish or wildlife." *Id*. § 1532(16).

12. To carry out the ESA's paramount purpose that listed species be "conserved," section 4(f) of the Act sets forth a detailed process for the development and implementation of recovery plans. Section 4(f)(1) provides that the Service "shall develop and implement [recovery] plans for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless [it] finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1). The Service, "in developing and implementing recovery plans, shall, to the maximum extent practicable" incorporate "such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species," as well as "objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal." *Id.* § 1533(f)(1)(B)(i)-(iii). A recovery plan must, therefore, provide for the recovery of the species.

13. Reinforcing the importance of recovery plans, Congress provided for public participation in the development and amendment of the plans. For example, prior to final approval of any "new or revised recovery plan," the Service must "provide public notice and an opportunity for public review and comment on such plan," 16 U.S.C. § 1533(f)(4), and the Service "shall consider all information presented during the public comment period prior to approval of the plan." *Id.* § 1533(f)(5). The Service must also "report every two years to the Committee on Environment and Public Works of the Senate and the Committee on Merchant Marine and Fisheries of the House of Representatives on the status of efforts to develop and

5

implement recovery plans for all species listed pursuant to this section and the status of all species for which such plans have been developed." *Id.* § 1533(f)(3).

14.     The Service's internal recovery planning guidelines provide that final recovery plans "shall be completed within 2.5 years of listing." Nat'l Marine Fisheries Serv. & U.S. Fish & Wildlife Serv., Interim Endangered and Threatened Species Recovery Planning Guidance, Version 1.4 at 1.5-2 (July 2018) [hereinafter "Recovery Planning Guidance"].

15.     The ESA also requires the Service to regularly assess the status of listed species. Specifically, section 4(c) requires that the Service "conduct, at least once every five years, a review of all [listed] species . . . ." 16 U.S.C. § 1533(c)(2)(A). Based on that review, the agency can determine whether the species should maintain its protections or be uplisted or delisted. *Id.* § 1533(c)(2)(B); *see also* 50 C.F.R. § 424.21.

16.     Section 7(a)(1) of the ESA provides an "affirmative duty" for federal agencies to conserve listed species. It provides that all federal agencies shall "utilize their authorities in furtherance of the purposes of this chapter by carrying out programs for the conservation of endangered species and threatened species . . . ." 16 U.S.C. § 1536(a)(1).

17.     The ESA's citizen suit provision provides for judicial review where the Service has failed to perform a mandatory duty under ESA section 4. 16 U.S.C. § 1540(g)(1)(C). The APA provides the standard of review, 5 U.S.C. § 706(2)(A). Additionally, under the APA, a reviewing court must "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

## THE HOUSTON TOAD AND ITS OUTDATED AND LEGALLY INADEQUATE 1984 RECOVERY PLAN DOCUMENT

18.     The Houston toad is a two to three-and-a-half inch long toad found only in Texas. The toad is a habitat specialist, appearing to prefer habitats with deep sandy soils and forest

6

cover that are near breeding ponds. Breeding pool characteristics vary and can be shallow, but water must persist for at least sixty days for successful reproduction.

19.     The Houston toad historically ranged across the central coastal region of Texas, but disappeared from the Houston area (Harris, Fort Bend, and Liberty counties) during the 1960s, likely due to the combination of rapid urban expansion and a prolonged drought. The toad is now thought to be extirpated in these three counties.

20.     Because of its precipitous declines, in 1970 the Service listed the Houston toad under the Endangered Species Conservation Act of 1969, the precursor to the Endangered Species Act of 1973.

21.     The Houston toad continued to decline across its range since listing, and habitat loss and fragmentation continue to occur throughout the toad's range. Declines are documented throughout the rest of the toad's range, outside of the Houston area, since the 1980s. For example, while surveyors reported 30 to 1,000 Houston toads per breeding pond in Bastrop County in the 1980s, that estimate declined to only 2,000 toads for the entire county by 1994. And by 2003, surveyors estimated that only 100-200 individuals survived in Bastrop County. Extensive surveys for Houston toads across seven counties in 2011 detected only twelve individuals across four of those counties.

22.     The Service issued a document styled as a "Recovery Plan" for the Houston toad in 1984. The document stated that "[p]eriodic revisions will be necessary as the plan is implemented." 1984 "Recovery Plan" document at ii.

23.      In the more than thirty-five years since the Service issued the 1984 "Recovery Plan" document, it has failed to issue any supplements or revisions to this document.

24. The 1984 "Recovery Plan" document does not incorporate "such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species," 16 U.SC. § 1533 f(1)(B)(1). Instead, the document's recovery outline and narrative focus primarily on conducting monitoring, surveys and research on the species, as well as vague plans to "[r]estore and manage populations . . . in suitable areas of former range" through identification and management of habitat and species introductions. 1984 "Recovery Plan" document at 29-43.

25. The 1984 "Recovery Plan" document does not incorporate "objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list" 16 U.SC. § 1533 f(1)(B)(2). Rather, the document lists vague goals: "(1) protecting [the Houston toad's] known populations and habitats, (2) locating and protecting additional natural populations and habitats, (3) determining its taxonomic status with respect to other forms of *Bufo*, and (4) introducing and establishing self-sustaining wild populations on sites in its historic range." 1984 "Recovery Plan" document at 29-30.

26. The 1984 "Recovery Plan" document does not incorporate "estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal." 16 U.SC. § 1533 f(1)(B)(1). The 1984 "Recovery Plan" document is devoid of any discussion or mention of time or costs that may be required.

27. In November 2011, the Service published its first five-year review for the Houston toad. In the 2011 5-Year Review, the Service noted that the 1984 "Recovery Plan" document "does not reflect the most up-to-date information on the species' biology, nor does it address all five listing factors that are relevant to the species." 2011 5-Year Review at 3. The

Service also acknowledged that "there are no recovery criteria in the 1984 Recovery Plan. Instead, the 1984 plan details a series of recovery goals," and explains that "[a] Recovery Plan with updated, measurable, and objective criteria is needed." *Id*.

28.  In the section of the 2011 5-Year Review entitled "Recommendations for Future Actions," the Service included the need for "[a]n updated recovery plan that includes objective, measurable recovery criteria." 2011 5-Year Review at 15. The Service further explains "[t]here is an active recovery team for this species. In 2011, the Service is working with the recovery team to develop a new recovery strategy for the Houston toad and begin drafting an updated recovery plan." *Id*. Yet, to date, more than eight years later, no such recovery plan has been issued.

29.  The Service published its most recent 5-Year Review for the Houston toad in July 2018. The 2018 5-Year Review consists of a single page and simply concludes that "[t]he evaluation of threats affecting the species under the factors 4(a)(1) of the Act and analysis of the status of the species in our 2011 5-Year review remains an accurate reflection of the species current status." 2018 5-Year Review. The 2018 5-Year Review did not include any information regarding progress towards the development of a new recovery strategy or updated recovery plan. *Id*.

## FIRST CLAIM FOR RELIEF

**Violation of Endangered Species Act Section 4(f), 16 U.S.C. § 1533(f)**

30.  Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

31.     Under section 4(f) of the ESA, the Service has a non-discretionary duty to "develop and implement" recovery plans for the "conservation and survival" of listed species. 16 U.S.C. § 1533(f)(1).

32.     Each recovery plan must include, to the maximum extent practicable, "such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species," as well as "objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list," and "estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal." *Id.* § 1533(f)(1)(B)(i)-(iii).

33.     The Service prepared a document styled as a "Recovery Plan" for the Houston toad in 1984. However, this document did not contain any objective, measurable recovery criteria. 1984 "Recovery Plan" document at 3. The document also did not incorporate "site-specific management actions," or "estimates of the time required and the cost to carry out" measures necessary to achieve conservation and survival of the Houston toad.

34.     Furthermore, the Service explained in its 2011 5-Year Review for the Houston toad that the 1984 "Recovery Plan" document "does not reflect the most up-to-date information on the species' biology, nor does it address all five listing factors that are relevant to the species." 1984 "Recovery Plan" document at 3.

35.     Because the Service never developed a scientifically grounded and legally valid recovery plan for the Houston toad, the Service has failed to "develop and implement" a plan for the "conservation and survival" of the Houston toad, in violation of ESA section 4(f), 16 U.S.C. § 1533(f)(1).

**SECOND CLAIM FOR RELIEF**

**Agency Action Unlawfully Delayed or Unreasonably Withheld Under Administrative Procedure Act, 5 U.S.C. § 706(1)**

36.     Plaintiff re-alleges and incorporates by reference the allegations made in all preceding paragraphs.

37.     Under the Administrative Procedure Act ("APA"), a reviewing court has the authority to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

38.     Completion of a recovery plan for the Houston toad under the ESA constitutes a discrete action that the Service was required to take pursuant to 16 U.S.C. § 1533(f).

39.     Agency policy provides that the Service should complete a final recovery plan within two and a half years of a species' listing under the ESA.

40.     Forty-nine years after the Houston toad's listing under the ESA and thirty-five years after an incomplete "Recovery Plan" document was published, the Service has failed to produce a legally compliant recovery plan for the Houston toad, which is one of the most endangered amphibians in the United States.

41.     This delay is unlawful and unreasonable because the Service is not operating under a legally valid recovery plan and has not determined that such a plan would not promote the conservation of the Houston toad.

42.     The Service's continued failure to prepare a legally sufficient recovery plan constitutes "agency action unlawfully withheld or unreasonably delayed" under the APA, 5 U.S.C. § 706(1).

**PRAYER FOR RELIEF**

The Center respectfully requests that the Court grant the following relief:

1.      Declare that the Service is in violation of section 4(f) of the ESA, 16 U.S.C. § 1533(f), and the APA, 5 U.S.C. § 706(1);

2.      Order the Service to prepare and implement a scientifically based, legally valid recovery plan for the Houston toad according to a timeline established by the Court;

3.      Award the Center its reasonable fees, costs and expenses associated with this litigation pursuant to 16 U.S.C. § 1540(g)(4) and/or 28 U.S.C. § 2412(d); and

4.      Grant such other and further relief as the Court deems just and proper to remedy the Service's violations of law.

DATED: February 24, 2020                    Respectfully submitted,

/s/ Ryan Adair Shannon_____
Ryan Adair Shannon
(D.C. Bar No. OR0007)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Tel.: (971) 717-6407
Email: rshannon@biologicaldiversity.org

Jennifer L. Loda (CA Bar No. 284889)*
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612-1810
Tel: (510) 844-7136
jloda@biologicaldiversity.org

*Attorneys for Plaintiff*

*Seeking admission *pro hac vice*