IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY,<br><br>Plaintiff,<br><br>  v.<br><br><br>DAVID BERNHARDT, in his official capacity as Secretary of the United States Department of the Interior, et al.<br><br><br>Defendants. | Case No.:  1:20-cv-00529-TNM<br><br><br>**OPPOSITION TO MOTION TO DISMISS** |

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL BACKGROUND ...................................................................................................... 2

    I. ENDANGERED SPECIES ACT ..................................................................................... 2

    II. STATUTES OF LIMITATIONS ................................................................................... 4

FACTUAL BACKGROUND ................................................................................................. 4

STANDARD OF REVIEW .................................................................................................... 6

ARGUMENT ......................................................................................................................... 7

    I. THE CENTER SEEKS TO ENFORCE A MANDATORY DUTY ..................................... 7

    II. THE CENTER'S CLAIMS ARE TIMELY .................................................................... 14

CONCLUSION ...................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Agua Caliente Band of Cahuilla Indians v. Mnuchin*, 20-cv-01136, 2020 U.S. Dist. LEXIS
    82375 (D.D.C. May 11, 2020) .................................................................................... 17

*AKM LLC v. Sec'y of Labor*, 675 F.3d 752,  (D.C. Cir. 2012) ...................................... 4

*Am. Canoe Ass'n v. U.S. EPA*, 30 F. Supp. 2d 908 (E.D. Va. 1998) ........................... 15

*Am. Mining Cong. v. U.S. EPA*, 824 F.2d 1177 (D.C. Cir. 1987) ................................ 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 6

*Bennett v. Spear*, 520 U.S. 154 (1997) ................................................................... 6, 18

*Ctr. for Biological Diversity v. Zinke*, 399 F. Supp. 3d 940 (D. Ariz. 2019) ............... 9

*Defenders of Wildlife v. Babbitt*, 130 F. Supp. 2d 121 (D.D.C. 2001) ..................... 8, 9

*Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383 (2015) ....................................... 13

*Friends of Blackwater v. Salazar*, 691 F.3d 428 (D.C. Cir. 2012) ............... 7, 11, 13, 16

*Friends of the Wild Swan, Inc. v. Thorson*, 260 F. Supp. 3d 1338 (D. Or. 2017) ................... 8, 13

*Fund for Animals v. Babbitt,* 903 F. Supp. 96 (D.D.C. 1995) ................................... 8, 9

*Gabbs Exploration Co. v. Udall*, 315 F.2d 37 (D.C. Cir. 1963) ................................. 16

*Grand Canyon Trust v. Norton*, No. 04-CV-636-PHX-FJM, 2006 U.S. Dist. LEXIS 2375, (D.
    Ariz. Jan. 18, 2006) ............................................................................................... 13

*Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008 (9th Cir. 2012) ................. 8

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982). ............................................. 4

*In re Bluewater Network*, 234 F.3d 1305 (2000) ................................................. 15, 16

*In re Pub. Emples.,* 957 F.3d 267 (D.C. Cir. 2020) ..................................................... 17

*In re UMW Int'l Union*, 190 F.3d 545 (D.C. Cir. 1999) ........................................ 15, 16

*Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, No. 07-CV-358-PK, 2007 U.S. Dist. LEXIS
    85197 (D. Or. Nov. 16, 2007). ..................................................................... 4

*Jackson v. Modly*, 949 F.3d 763 (D.C. Cir. 2020) ......................................... 4

*Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994) ........................................ 10

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ................................ 6

*Morley v. Walker*, 175 F.3d 756 (9th Cir. 1999) ........................................ 7

*Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, (2004) ................................. 7, 14

*Russello v. United States*, 464 U.S. 16 (1983) ........................................ 13

*Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) ............................... 17

*TVA v. Hill*, 437 U.S. 153, 98 S. Ct. 2279 (1978) ...................................... 2

*WildEarth Guardians v. Salazaar*, No. 09-cv-1893, 2009 U.S. Dist. LEXIS 126451 (S.D. Tex.
    Dec. 7, 2009) ............................................................................. 9, 16, 17

*Wilderness Soc'y v. Norton*, 434 F.3d 584 (D.C. Cir. 2006) ................................. 15, 16

**Statutes**

16 U.S.C. § 1531(b) ............................................................................. 2

16 U.S.C. § 1532(20) ........................................................................ 2, 3

16 U.S.C. § 1532(3) ........................................................................ 2, 11

16 U.S.C. § 1532(5)(B) ......................................................................... 13

16 U.S.C. § 1532(6) ........................................................................... 2

16 U.S.C. § 1532(20) ........................................................................ 2, 3

16 U.S.C. § 1533(a)(1) ........................................................................................................... 2

16 U.S.C. § 1533(b)(6)(C) .................................................................................................... 12

16 U.S.C. § 1533(f) ......................................................................................................... 1, 7, 9

16 U.S.C. § 1533(f)(1) ........................................................................................................ 3, 8

16 U.S.C. § 1533(f)(1)(B) ......................................................................................... 3, 8, 9, 11

16 U.S.C. § 1533(f)(3) ........................................................................................................... 4

16 U.S.C. § 1533(f)(4) ........................................................................................................... 3

16 U.S.C. § 1533(f)(5) ........................................................................................................... 3

16 U.S.C. § 1540(g)(1)(C) ...................................................................................................... 7

28 U.S.C. § 2401(a) .................................................................................................... 4, 14, 15

5 U.S.C. § 706(1) .................................................................................................. 7, 14, 15, 17

## INTRODUCTION

The U.S. Fish and Wildlife Service ("Service") does not deny that it has never issued a Recovery Plan for the Houston toad that complies with the mandatory components of a recovery plan under the Endangered Species Act ("ESA" or "Act"), 16 U.S.C. § 1533(f). Indeed, the government appears to concede that the only Recovery Plan ever prepared for the endangered Houston Toad—which was issued in 1984—does *not* fulfill the mandate of the ESA's existing recovery plan provision, which was enacted in 1988. *See, e.g.*, Mot. at 11 (arguing that the plan for the Houston toad "adhered to the mandates of ESA 4(f) *in effect at the time*) (emphasis added); *id.* at 7 (same).

Instead, having failed to ever issue a recovery plan that comports with ESA section 4(f) as presently drafted despite the Act's command to develop and implement such a plan, and having repeatedly delayed what the Service itself has said is essential recovery planning for the Houston toad, Defendants now seek to use this delay to preclude any judicial scrutiny of their conduct, thereby nullifying the essential planning duty imposed by the ESA. Defendants claim that their issuance of a legally inadequate, admittedly outdated planning document in 1984 forever exempts it from compliance with the 1988 amendments to the ESA that Congress adopted for the specific purpose of remedying the Service's pre-1988 recovery planning deficiencies. But Defendants never coherently explain why this approach to the ESA, which Congress enacted in order to bring imperiled species like the Houston toad back from the brink of extinction, makes any legal or logical sense.

To the contrary, Defendants' arguments contravene the text and overriding purpose of the Act, the legislative history of the 1988 amendments, and the principles underlying statutory construction and the statutes of limitations. At the very least, Plaintiff has advanced plausible

1

claims that Defendants are in ongoing violation of their statutory duties—which is all the Court

needs at the motion to dismiss stage. As such, the Defendants' motion to dismiss should be

denied.

## LEGAL BACKGROUND

### I.   ENDANGERED SPECIES ACT

The Endangered Species Act, 16 U.S.C. §§ 1531-1544, is "the most comprehensive

legislation for the preservation of endangered species ever enacted by any nation." *TVA v. Hill*,

437 U.S. 153, 98 S. Ct. 2279, 180 (1978). In enacting the law, Congress recognized that losses

from extinctions are irreversible and incalculable but also preventable. *Id.* at 184. The ESA

reflects Congressional intent to afford endangered species the "highest of priorities" and to "halt

and reverse the trend toward species extinction, whatever the cost." *Id.* at 174, 184, 194.

Congress enacted the ESA, in part, to provide a "means whereby the ecosystems upon

which endangered species and threatened species depend may be conserved . . . [and] a program

for the conservation of such endangered species and threatened species . . ." 16 U.S.C. § 1531(b).

The ESA defines "conservation" as the "use of all methods and procedures which are necessary

to bring any endangered species or threatened species to the point at which the measures

provided pursuant to this chapter are no longer necessary," *id.* § 1532(3), i.e. to bring about the

recovery of species listed as endangered or threatened. *See id.* § 1532(6), (20) (definitions of

"endangered species" and "threatened species").

The ESA requires the Secretary to protect imperiled species by listing them as either

"endangered" or "threatened." 16 U.S.C. § 1533(a)(1). The ESA defines an "endangered

species" as "any species which is in danger of extinction throughout all or a significant portion of

its range." *Id*. § 1532(6). A "threatened species" is "any species which is likely to become an

endangered species within the foreseeable future throughout all or a significant portion of its range." *Id*. § 1532(20).

To carry out the ESA's paramount purpose that listed species be "conserved," section 4(f) of the Act sets forth a detailed process for the development and implementation of recovery plans. Section 4(f)(1) provides that the Service "shall develop and implement [recovery] plans for the conservation and survival of endangered species and threatened species listed pursuant to this section, unless [it] finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1). The Service, "in developing and implementing recovery plans, shall, to the maximum extent practicable" incorporate "such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species," as well as "objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal." *Id.* § 1533(f)(1)(B)(i)-(iii). A recovery plan must, therefore, provide for the recovery of the species.

Reinforcing the importance of recovery plans, Congress provided for public participation in the development and amendment of the plans. For example, prior to final approval of any "new or revised recovery plan," the Service must "provide public notice and an opportunity for public review and comment on such plan," *id.* § 1533(f)(4), and the Service "shall consider all information presented during the public comment period prior to approval of the plan," *id.* § 1533(f)(5). The Service must also "report every two years to the Committee on Environment and Public Works of the Senate and the Committee on Merchant Marine and Fisheries of the House of Representatives on the status of efforts to develop and implement recovery plans for all

species listed pursuant to this section and the status of all species for which such plans have been developed." *Id.* § 1533(f)(3).

## II.      STATUTES OF LIMITATIONS

28 U.S.C. § 2401(a) imposes a general statute of limitations on civil actions against the government where the underlying statute does not contain a specific statute of limitations. Section 2401(a) states that "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." 28 USCS § 2401(a). This bar, however, is not jurisdictional and is subject to equitable doctrines and tolling. *Jackson v. Modly*, 949 F.3d 763, 778 (D.C. Cir. 2020) ("[W]e hold that § 2401(a)'s time bar is nonjurisdictional and subject to equitable tolling.").

"[S]tatutes of limitations are designed to constrain the government's enforcement authority and to promote finality, repose, and the efficient and prompt administration of justice." *AKM LLC v. Sec'y of Labor*, 675 F.3d 752, 767 (D.C. Cir. 2012) (Brown, J., concurring). Such statutes "are grounded in equity and based on the principles of avoiding stale claims, achieving finality, and protecting those who rely on the law." *Inst. for Wildlife Prot. v. U.S. Fish & Wildlife Serv.*, No. 07-CV-358-PK, 2007 U.S. Dist. LEXIS 85197, *13 (D. Or. Nov. 16, 2007). However, in cases involving *continuing* violations, "the staleness concern disappears" because, by definition, the violation is ongoing in nature and continuing until the present day. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 380 (1982).

## FACTUAL BACKGROUND

The Houston toad is a two to three-and-a-half-inch long toad found only in Texas. Compl. ¶ 18. The Houston toad historically ranged across the central coastal region of Texas, but disappeared from the Houston area (Harris, Fort Bend, and Liberty counties) during the 1960s,

likely due to the combination of rapid urban expansion and a prolonged drought. *Id*. ¶ 19

Because of its precipitous declines, in 1970 the Service listed the Houston toad under the

Endangered Species Conservation Act of 1969, the precursor to the Endangered Species Act of

1973. *Id*. ¶ 20.

 The Houston toad has continued to decline across its range since listing, and habitat loss

and fragmentation continue to occur throughout the toad's range. *Id*. ¶ 21. Declines are

documented throughout the rest of the toad's range, outside of the Houston area, since the 1980s.

*Id*. For example, while surveyors reported 30 to 1,000 Houston toads per breeding pond in

Bastrop County in the 1980s, by 2003 surveyors estimated that only 100-200 individuals

survived in the entire county. *Id*. Extensive surveys for Houston toads across seven counties in

2011 detected only twelve individuals across four of those counties. *Id*. In 2011, the Service

found threats to the Houston toad to be severe and imminent, and that "such small numbers of

Houston toad individuals remaining with no recruitment and ongoing threats of habitat loss and

persistent drought conditions could indicate the extinction of this species is likely within the near

future." Defs. Mot. Exh. B at 15 (ECF 13-2).

 The Service issued a document styled as a "Recovery Plan" for the Houston toad in 1984.

Compl. ¶ 22; Mot. Exh. A (ECF 13-1) (1984 Recovery Plan). The document stated that

"[p]eriodic revisions will be necessary as the plan is implemented." Compl. ¶ 22. However,

following the enactment of the current version of ESA section 4(f) in 1988 and, indeed, in the

more than thirty-five years since the Service issued the 1984 "Recovery Plan" document, the

agency has failed to issue any such supplements or revisions to this document. *Id*. ¶ 23.

 In November 2011, the Service published its first five-year review for the Houston toad.

*Id*. ¶ 27. Mot. Exh. B (ECF 13-2) (2011 5-Year Review). In the 2011 5-Year Review, the Service

noted that the 1984 "Recovery Plan" document "does not reflect the most up-to-date information on the species' biology, nor does it address all five listing factors that are relevant to the species." *Id*. The Service also acknowledged that "there are no recovery criteria in the 1984 Recovery Plan," as mandated by section 4(f); "[i]nstead, the 1984 plan details a series of recovery goals," and explains that "[a] Recovery Plan with updated, measurable, and objective criteria is needed." *Id*. The Service further explained "[t]here is an active recovery team for this species. In 2011, the Service is working with the recovery team to develop a new recovery strategy for the Houston toad and begin drafting an updated recovery plan." *Id*. ¶ 28. Yet, to date, more than eight years later, no such recovery plan has been issued.

In July 2018, the Service published another 5-Year Review for the Houston toad. *Id*. ¶ 29; Mot. Exh. C (ECF 13-3) (2018 5-Year Review). The 2018 5-Year Review indicated there was no change in status for the Houston toad and no new information available about the toad. *Id*. The Service made no mention of ongoing recovery planning or other actions by the recovery planning team in the intervening seven years. *Id*.

## STANDARD OF REVIEW

At the pleading stage, to survive a motion to dismiss under Rule 12(b)(1), "general factual allegations . . . may suffice," because courts must "presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (internal quotation marks and citations omitted). To survive a motion to dismiss under Rule 12(b)(6), a complaint need only allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, a plaintiff's pleading burden at the motion-to-dismiss stage "is relatively modest." *Bennett v. Spear*, 520 U.S. 154, 171

(1997). As such, a court should grant such a motion "only where it appears, beyond doubt, that the plaintiff can prove no set of facts that would entitle it to relief." *Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999).

## ARGUMENT

The Center's allegations state valid claims under both section 4(f) of the ESA and section 706(1) of the APA, which properly invoke this Court's jurisdiction. Citizen suits against the Secretary of the Interior are available to those seeking to enforce mandatory duties under the ESA. 16 U.S.C. § 1540(g)(1)(C). Additionally, a claim under section 706(1) of the APA, to "compel agency action unlawfully withheld or unreasonably delayed" 5 U.S.C. § 706(1), can proceed "where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("*SUWA*"). These are precisely the types of claims the Center brings here.

In addition, the Center's claims are not time-barred because its allegations focus on the Service's ongoing failure to act under a continuing statutory requirement, and that violation continues to this day.

## I.      THE CENTER SEEKS TO ENFORCE A MANDATORY DUTY

The Center seeks to enforce a discrete and mandatory recovery planning duty under ESA section 4 that is readily ascertainable from the statute and therefore actionable under 16 U.S.C. § 1540(g)(1)(c) and 5 U.S.C. § 706(1). Compl. ¶¶ 31-42; *see SUWA*, 542 U.S. at 64. The Service has a mandatory duty to conduct recovery planning that complies with ESA section 4(f)(1), as the statute says the Service "*shall*" incorporate specific criteria "in developing and implementing recovery plans." 16 U.S.C. § 1533(f); *Friends of Blackwater v. Salazar*, 691 F.3d 428, 436-37 (D.C. Cir. 2012) ("[Section] 4(f)(1) of the [ESA] imposes mandatory obligations" on the Service,

including the obligation to "include 'objective, measurable criteria'" in a recovery plan and to "implement the plan." 16 U.S.C. § 1533(f)(1)(B)(ii); *see also Defenders of Wildlife v. Babbitt*, 130 F. Supp. 2d 121(D.D.C. 2001); *Fund for Animals v. Babbitt* 903 F. Supp. 96 (D.D.C. 1995); *Friends of the Wild Swan, Inc. v. Thorson*, 260 F. Supp. 3d 1338, 1342 (D. Or. 2017) ("A citizen may [] bring suit under § 1540(g) when the Secretary fails to incorporate, to the maximum extent possible, one of the requirements from § 1533(f)(1)(B) in a given recovery plan."). Both the duty to issue a recovery plan that satisfies the basic strictures of section 4(f) and the statutorily specified procedures for carrying out that duty are not discretionary. *Grand Canyon Trust v. U.S. Bureau of Reclamation*, 691 F.3d 1008, 1023-24 (9th Cir. 2012) (affirming the district court's finding that both the setting of recovery goals and the accompanying notice and comment requirements under section 4(f) are nondiscretionary).

Defendants do not appear to dispute, at least at this stage, that the Service has never issued a recovery plan for the Houston toad that complies with the basic requirements of section 4(f) as presently drafted. In particular, although section 4(f) provides that the Service "*shall develop and implement*" recovery plans which "shall, to the maximum extent practicable . . . incorporate . . . objective, measurable criteria which, when met, would result in a determination" that the species has recovered and should therefore be "removed from the list" of endangered and threatened species, 16 U.S.C. §§ 1533(f)(1), (f)(1)(B), it is undisputed that the Service has never adopted such criteria for the toad. The vital function of this requirement is evident: it is both to guide the Service's recovery actions for a particular species and to set the stage for removing the stringent strictures that the ESA imposes when they are no longer necessary.

Defendants also do not dispute (and cannot dispute) that if, post-1998, the Service were to issue a Recovery Plan for the Houston toad (or any other species) that lacks any such

"objective, measurable criteria" or any other statutorily-required elements of a recovery plan,
Plaintiff would have a cognizable claim that the Service has failed to carry out a mandatory duty
under section 4(f) of the ESA. *See Defenders of Wildlife*, 130 F. Supp. 2d at 134 (finding the
Service's failure to include objective, measurable recovery criteria in the Sonoran Pronghorn
Recovery Plan, and failure to provide an adequate explanation as to why it could not be
incorporated, violated the ESA's requirement that recovery plans include "objective, measurable
criteria which, when met, would result in a determination . . . that the species be removed from
the list." 16 U.S.C. § 1533(f)(1)(B)(ii)); *Fund for Animals*, 903 F. Supp. at 108 (finding that the
grizzly bear recovery plan failed to incorporate objective, measurable recovery criteria and
remanding the plan to the Service to reconsider the portions of the plan that fail to comply with
the ESA); *Ctr. for Biological Diversity v. Zinke*, 399 F. Supp. 3d 940, 949-50 (D. Ariz. 2019)
(holding that the court had jurisdiction to review plaintiff's claim that the Mexican wolf recovery
plan violates section 4(f) by failing to include site-specific management actions to address the
threat of illegal killings). In *WildEarth Guardians v. Salazaar*, No. 09-cv-1893, 2009 U.S. Dist.
LEXIS 126451, at *11 (S.D. Tex. Dec. 7, 2009), plaintiff challenged the Service's failure to
prepare and implement a lawful recovery plan for the endangered jaguarundi, and survived a
12(b)(6) motion to dismiss "[d]espite the existence of a [Recovery] Plan," because the plaintiff
sufficiently alleged the Service failed to perform "non-discretionary duties under 16 U.S.C. §
1533(f) because the Plan does not meet the non-discretionary requirements of a recovery plan."[1]

Nonetheless, Defendants argue that the Service is not required to issue a recovery plan
for the Houston toad that complies with the extant requirements of section 4(f)(1), because those

---

[1] For the same reasons, the court found a valid claim under the APA, where the Complaint
alleged a violation under the APA for agency action unlawfully withheld and unreasonably
delayed. *WildEarth Guardians*, 2009 U.S. Dist LEXIS 126451 at *11.

requirements were added in 1988 amendments to the ESA, four years after the Service issued an initial plan for the toad, and Plaintiff's argument therefore somehow "impermissibly reads retroactivity into the 1988 amendments to the ESA." Mot. at 8. There are multiple legal and logical flaws in this argument.

To begin with, it is not clear what Defendants mean by "retroactive" application of the 1988 amendments. Defendants do not appear to be arguing that the 1988 amendments should not be applied to species that were *listed* as endangered or threatened prior to 1988 but for which no recovery plan had yet been prepared. Rather, Defendants' sole, narrow argument appears to be that, only for those pre-1998 listed species for which something called a "recovery plan" had been adopted, Congress intended that newly adopted recovery plan requirements could be ignored. On its face, however, that dichotomy makes no sense. Why would Congress want pre-1998 listed species *without* recovery plans to be subject to the more rigorous recovery plan requirements Congress deemed necessary, and yet pre-1998 listed species with inadequate plans admittedly lacking in such requirements—and particularly objective, measurable recovery criteria—could be subject to such deficient plans forever? Defendants never venture an explanation.

In any event, Defendants' retroactivity argument misconstrues the Center's claim. The Center does not challenge the Service's conduct prior to 1988, namely the 1984 Recovery Plan. *See Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994) (defining retroactivity as "attach[ing] new legal consequences to events completed before [a statute's] enactment"). Rather, the Center seeks to enforce ESA section 4(f) (as amended in 1988) as to the Service's ongoing *inaction after Congress strengthened the recovery plan provision* and imposed a duty on the Service to

adopt recovery plans containing objective, measurable recovery criteria and other specific elements.

Applying amended section 4(f) to the Service's post-1988 inaction is consistent with the statute's plain language. *See Am. Mining Cong. v. U.S. EPA*, 824 F.2d 1177, 1183-84, 1190 (D.C. Cir. 1987) (holding that statutory interpretation begins with plain language, which is ordinarily conclusive). Congress's 1988 ESA amendment reaffirmed the Service's duty to "develop and implement" recovery plans "for the conservation and survival" of ESA-listed species and added that, "in developing and implementing recovery plans," the Service "shall, to the maximum extent practicable," incorporate specific actions and objective criteria. 16 U.S.C. § 1533(f)(1)(B). Congress thus imposed new duties that apply to the Service's conduct "in developing and implementing recovery plans," *id*. § 1533(f)(1), which continues "as long as a species is listed as endangered." *Friends of Blackwater*, 691 F.3d at 437. There is nothing in the language of section 4(f), or anywhere else in the statute, to suggest that Congress intended to exempt from the strengthened requirements those species subject to previously issued plans that do not comport with what Congress deemed necessary for a recovery plan.

In addition to having no basis in the plain language of the Act, Defendants' arguments are also impossible to harmonize with the paramount purpose of the ESA to conserve endangered and threatened species, and to use "all methods and procedures which are necessary" to bring about the recovery and ultimate delisting of species listed as endangered or threatened. 16 U.S.C. § 1532(3). If, as Congress determined in 1988, recovery plans with certain elements are vital to furthering the recovery of species to the point where they may be "removed from the list," *id*. § 1532(f)(1)(B), then that is certainly also true with regard to species such as the Houston toad,

which has never been the beneficiary of the kind of recovery plan that Congress has deemed necessary to effectuate the purposes of the ESA.

The legislative history of the 1988 amendment is also contrary to Defendants' claim that the Service is forever exempt from compliance with the 1988 amendment in regard to the Houston toad. Congress amended section 4(f) after reviewing the Service's recovery planning efforts and finding many vague, generalized plans. S. Rep. No. 240, 100th Cong., 2d Sess. at 4 (1987), reprinted in 1988 U.S. Code Cong. & Admin. News 2700 ("recovery plans have failed to include consistent criteria, time frames and estimated costs for recovery"). In response, Congress enacted the amendments in 1988 which were designed to "improve the development, implementation and review of plans for the recovery of listed species," to "ensure that plans are as explicit as possible in describing the steps to be taken in the recovery of a species" and "provide a means by which to judge the progress being made toward recovery." *Id*. at 9-10. The Service's attempt to exempt itself from the 1988 amendments for the Houston toad is therefore an especially peculiar one in light of the fact that Congress explicitly amended the statute to repair deficiencies in the Service's pre-1988 recovery planning efforts, including those for the Houston toad.

Moreover, when Congress wants to make the kinds of distinctions on which Defendants are relying, it knows how to do so, and in fact has made such intentions explicit in the statute. For example, in 1978, Congress amended the ESA by imposing on the Service the obligation, with certain enumerated exceptions, to designate "critical habitat" for species "concurrently" with new listings. 16 U.S.C. § 1533(b)(6)(C). However, for species already listed at the time of the amendment, Congress provided only that "[c]ritical habitat *may* be established for those species now listed as threatened or endangered for which" no critical habitat had previously been

established. *Id*. § 1532(5)(B) (emphasis added). Consequently, with regard to critical habitat, Congress expressly vested the Service with discretion as to whether to impose the new statutory requirements for previously listed species. But no such distinction was made in regard to the recovery plan obligations, which, again, provide that the Service "shall develop and implement" recovery plans for listed species that include "objective, measurable" recovery criteria, among other enumerated items. *See, e.g.*, *Dep't of Homeland Sec. v. MacLean*, 574 U.S. 383, 391 (2015) (invoking the statutory construction axiom that "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another") (citing *Russello v. United States*, 464 U.S. 16, 23 (1983)).

Defendants seek to support their argument by downplaying the importance of recovery plans and focusing on cases which support its contention that "recovery plans are not binding authority but merely broad planning documents." Mot. at 10. But Defendants ignore that while courts in these cases found the Service has latitude in implementing recovery plans, they also held that the Service has no discretion regarding whether to incorporate the requirements of section 4(f)(1)(B) in each recovery plan. *E.g.* *Friends of Blackwater*, 691 F.3d at 284-85 ("[t]he [ESA] imposes mandatory obligations" on the Service to "develop a recovery plan" which "shall include 'objective, measurable criteria'"); *Friends of the Wild Swan*, 260 F. Supp. at 1342 ("A citizen may still bring suit under § 1540(g) when the Secretary fails to incorporate, to the maximum extent possible, one of the requirements from § 1533(f)(1)(B) in a given recovery plan"); *Grand Canyon Trust v. Norton*, No. 04-CV-636-PHX-FJM, 2006 U.S. Dist. LEXIS 2375, at *14 (D. Ariz. Jan. 18, 2006) ("Defendants fail to argue that it was not 'practicable' to include the estimates in the Recovery Goals, and therefore, they are not excused from this requirement."). In addition, Congress, in enacting the 1988 amendments, considered the

13

"recovery plan requirements" to be "important changes" necessary "to improve our ability to meet the goals of the [ESA]." 134 Cong. Rec. S8752, S9753, S9756 (daily ed. July 25, 1998) (statements of Sens. Mitchell and Moynihan).

The Service's mandatory recovery planning duty, including the obligation to comply with the requirements imposed by the 1988 amendments for the Houston toad, is supported by the statute, legislative history, and purpose of the ESA. At a bare minimum, the Center has a plausible claim under the ESA citizen suit provision, as well as the APA, that Defendants are in violation of their mandatory duty.[2] As such, the Court should deny Defendants' Motion to Dismiss and allow this case to proceed to summary judgment briefing.

## II.      THE CENTER'S CLAIMS ARE TIMELY

The Center's claims are timely under the six-year statute of limitations provided by 28 U.S.C. § 2401(a). As discussed above, Plaintiff challenges Defendants' failure to comply with the requirements of ESA section 4(f) such as to include "objective, measurable criteria" and "site-specific management plans." Compl. ¶¶ 33, 35. Contrary to Defendants' assertions, *E.g.* Mot. at 15, the Center's claims are not challenging the 1984 Recovery Plan itself—which preceded the mandatory duty imposed by Congress—but, rather, the Service's ongoing failure to comply with its continuing obligations under section 4(f) and its unlawful and unreasonable delay in producing a legally valid recovery plan. Compl. ¶¶ 31-42.

---

[2] Defendants also argue that this Court lacks jurisdiction over its claim under the APA, 5 U.S.C. § 706(1), using similar arguments based on its completion of a recovery plan in 1984. Mot. at 11-13. Although the viability of Plaintiffs' claim under the ESA citizen suit provision is sufficient to resolve Defendants' motion, Defendants' APA argument also fails for reasons explained above. This is because the Center's challenge is to the Service's failure to issue a recovery plan that complies with the requirements of section 4(f), including those requirements found in the 1988 amendments. This constitutes a paradigmatic claim that the Service has "failed to take a *discrete* action that it is *required* to take." *SUWA*, 542 U.S. at 64. Thus, the Center properly seeks an order to "compel action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1).

In other words, the Center challenges "not … what the agency has done but rather … what the agency has yet to do[.]" *In re UMW Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999). D.C. Circuit precedent is clear that in such cases, statutes of limitations, including the catch-all statute of limitations found in 28 U.S.C. § 2401(a), are inapplicable. *Id.*; *see also In re Bluewater Network*, 234 F.3d 1305, 1312–13 (D.C. Cir. 2000) (noting that petitioners challenged not the substance of the defendants' actions, but what the agency "has failed to do"); *Wilderness Soc'y v. Norton*, 434 F.3d 584, 588-89 (D.C. Cir. 2006) (noting that the D.C. Circuit "has repeatedly refused to hold that actions seeking relief under 5 U.S.C. § 706(1) to 'compel agency action unlawfully withheld or unreasonably delayed' are time-barred [by § 2401(a)] if initiated more than six years after an agency fails to meet a statutory deadline"); *see also Am. Canoe Ass'n v. U.S. EPA*, 30 F. Supp. 2d 908, 925 (E.D. Va. 1998) (in ongoing duty cases "application of a statute of limitations to a claim of unreasonable delay is grossly inappropriate, in that it would mean that [the agency] could immunize its allegedly unreasonable delay from judicial review simply by extending that delay for six years").

In *Wilderness Society v. Norton*, the D.C. Circuit Court of Appeals stated that it would reject the application of 28 U.S.C. § 2401(a) to a claim for failure to act under 5 U.S.C. § 706(1) where the complaint alleged that an agency had failed to meet a statutory obligation. 434 F.3d at 589. The court reasoned that "it is unlikely that [the] complaint would be held to be time-barred by 28 U.S.C. § 2401(a)" because it "does not complain about what the agency has done but rather about what the agency has yet to do." *Id.* at 589. The Court of Appeals noted that it has "repeatedly refused to hold that actions seeking relief under 5 U.S.C. § 706(1) to compel agency action unlawfully withheld or unreasonably delayed are time-barred if initiated more than six years after an agency fails to meet a statutory deadline." *Id.* at 588-89. Though the panel's

15

analysis in *Wilderness Soc'y* is dictum, the D.C. Circuit precedent underpinning the *Wilderness Soc'y* panel's discussion *is* binding. *See In re UMW Int'l Union*, 190 F.3d at 549; *In re Bluewater Network*, 234 F.3d 1305 at 1308, 1312 (2000). Regardless, this Court should heed the panel's well-considered analysis that is in line with earlier D.C. Circuit precedent. *See Gabbs Exploration Co. v. Udall*, 315 F.2d 37, 39 (D.C. Cir. 1963) (recognizing that although dictum is "not controlling on lower courts, such dictum certainly deserves serious consideration").

Accordingly, contrary to Defendants' effort to characterize Plaintiff's claim as a belated challenge to the 1984 plan, *see* Mot. at 14-16*,* the Service's recovery planning obligations are "not pegged to the point in time in which the [defective Recovery] Plan was released" but "continue[] even after this time." *WildEarth Guardians*, U.S. Dist. LEXIS 126451 at *13 (the alleged injury "did not occur with publication of the non-compliant [Recovery] Plan," but rather "occurred when Defendant subsequently and continuously failed to gather the necessary information to issue and implement a compliant plan thereafter"); *see also Friends of Blackwater*, 691 F.3d at 437 ("[A]s long as a species is listed as endangered, the agency is obligated to work toward the goals set in its recovery plan.").

In *WildEarth Guardians* the court considered circumstances analogous to those at issue here, with the plaintiff challenging the Service's failure to prepare and implement a lawful recovery plan for the endangered jaguarundi. U.S. Dist. LEXIS 126451. There, the Service argued that the claim was time-barred because the agency had issued an incomplete document labeled as a jaguarundi recovery plan more than six years before the suit was filed. *See id*. at *11-14. However, the court "reject[ed] the premise that what is being challenged is solely the sufficiency of the Plan as enacted in 1990" and found the suit was timely because "the Complaint

sufficiently alleges that the [Service] has continuously failed to perform actions required of him under the ESA." *Id*. at *12, 14. That is the case here as well.

Indeed, Defendants' argument is especially incongruous in view of controlling D.C. Circuit precedent on how courts should assess unreasonable delay claims such as the one before the Court here. Under the familiar "*TRAC*" factors, courts assessing whether an agency has "unreasonably delayed" carrying out a statutory duty, 5 U.S.C. § 706(1), look to a number of factors, the "most important" of which "concern the length of the agency's delay" in taking action required by law. *Agua Caliente Band of Cahuilla Indians v. Mnuchin*, No. 20-cv-01136, 2020 U.S. Dist. LEXIS 82375, *14 (D.D.C. May 11, 2020) (citing *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). Under this analysis, the *longer* that an agency takes in carrying out a duty imposed by Congress, the *more egregious* the delay and the more likely that a Court will hold that the agency action has been "unlawfully withheld and unreasonably delayed." Hence, as the court explained in *TRAC*, "[i]n the context of a claim of unreasonable delay, the first stage of judicial inquiry is to consider *whether the agency's delay is so egregious as to warrant*" the crafting of a judicial remedy. *TRAC*, 750 F.2d at 79; *see also In re Pub. Emples.*, 957 F.3d 267, 274 (D.C. Cir. 2020) (holding that, where an agency had "little show for [its] labors nineteen years" after a statute required it to act, the *TRAC* factors supported judicial relief).

Applying this precedential framework, the fact that it has been 32 years since Congress first required the Service to "develop and implement" recovery plans for endangered species that incorporated particular elements, and yet the Service has *still* failed to do so for the Houston toad, far from being a reason to dismiss this case as Defendants incongruously contend, it is a compelling reason to hold that Defendants' delay is sufficiently egregious to warrant judicial

relief. As such, the Center has, at a minimum, clearly met its "relatively modest" burden at this stage of litigation to survive a motion to dismiss. *See Bennett*, 520 U.S. at 171. Therefore, Defendants' motion should be denied and the case should proceed to summary judgment briefing.

## CONCLUSION

For the foregoing reasons, the Center respectfully requests that this Court deny Defendants' motion to dismiss.

Respectfully submitted this 5th day of June, 2020.

/s/ Jennifer L. Loda
Jennifer L. Loda (CA Bar No. 284889)*
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612-1810
Tel: (510) 844-7136
jloda@biologicaldiversity.org

Ryan Adair Shannon (D.C. Bar No. OR0007)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Tel.: (971) 717-6407
rshannon@biologicaldiversity.org

*Admitted pro hac vice

18